**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSE MAURICIO REYES,

                   *Petitioner-Plaintiff*,

    v.

JAMES MCHENRY,
       as Director,
       Executive Office for Immigration
       Review;

GARRY D. MALPHRUS,
       as Member, Board of Immigration
       Appeals, Executive Office for
       Immigration Review;

EDWARD F. KELLY,
       as Member, Board of Immigration
       Appeals, Executive Office for
       Immigration Review;

HUGH G. MULLANE,
       as Member, Board of Immigration
       Appeals, Executive Office for
       Immigration Review;

WILLIAM P. BARR,
       as Attorney General,
       U.S. Department of Justice;

THOMAS DECKER,
       as Field Office Director, New York
       City Field Office, U.S. Immigration
       & Customs Enforcement.

                 *Respondents-Defendants.*

Case No. 19-8674

**VERIFIED PETITION FOR
WRIT OF PROHIBITION AND
MANDAMUS AND
COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

**ORAL ARGUMENT
REQUESTED**

## PRELIMINARY STATEMENT

1.        Petitioner-Plaintiff, Jose Mauricio Reyes ("Mr. Reyes" or "Petitioner"), is a 28-year-old native of El Salvador who has resided in the United States for over a decade and is a single father to his two U.S. citizen children, ages one and three.  Mr. Reyes was granted bond from the Immigration Judge ("IJ") in December 2018, enabling him to fight his removal proceedings while caring for his two children in the community.  Nevertheless, he is now at imminent risk of wrongful re-arrest by Immigration and Customs Enforcement ("ICE") due to an order by the Board of Immigration Appeals ("BIA") unlawfully vacating the IJ's bond decision.

2.        In June 2018, Mr. Reyes was arrested for the first and only time in Nassau County, New York, and charged with misdemeanors related to an alleged domestic incident.  He disputed the charges, pled guilty to a non-criminal violation of disorderly conduct, and was sentenced to time served with a "limited" order of protection, allowing him to maintain full contact with the beneficiary of the order of protection, his ex-partner, and their two children.

3.        Immediately following the resolution of his criminal matter, ICE took Mr. Reyes into custody and initiated removal proceedings.

4.        Six months later, in December 2018, an IJ held a custody hearing, found that Mr. Reyes did not pose a danger to the public, and set an $8000 bond.  Mr. Reyes paid his bond and returned to the community, where he now works full time, serves as the sole caretaker for his two children, and has had no further arrests.

5.        Nearly nine months after Mr. Reyes's release, however, the BIA vacated the IJ's bond decision pursuant to an appeal by the government, ordering that Mr. Reyes be "detained on no bond."  Because there is no appeal available from a BIA order revoking bond, Mr. Reyes's only avenue for relief is through this court.

6.      The BIA's order is legally flawed and in violation of federal regulations, Second Circuit precedent, the Administrative Procedure Act ("APA"), and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

7.      First, the BIA violated federal regulations by reversing the IJ's finding of fact in the absence of clear error, and by making *de novo* factual findings.  *See* 8 C.F.R. § 1003.1(d)(3)(i) ("The Board will not engage in *de novo* review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous."); *id.* § 1003.1(d)(3)(iv) ("Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals.").

8.      Second, the BIA committed legal error by unambiguously mischaracterizing the factual record in Mr. Reyes's bond proceedings by stating that he had an alcohol abuse problem, and that he denied that problem, and by ignoring his stated willingness to reflect on his alcohol use and to attend an alcohol treatment program.  *See Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006) (noting that unambiguously erroneous factfinding constitutes legal error); *Liu v. I.N.S.*, 508 F.3d 716, 722 (2d Cir. 2007) (identifying legal error where the IJ "unambiguously mischaracterized a central element of the record") (internal quotation marks and citations omitted); *Zabaleta v. Decker*, 331 F. Supp. 3d 67, 72 (S.D.N.Y. 2018) ("By stating that the petitioner violated a condition of his bond [the IJ] 'unambiguously mischaracterized a central element of the record' and, therefore, committed reviewable legal error.") (quoting *Liu*, 508 F.3d at 722).

9.      Third, the BIA violated the Due Process Clause by relying on evidence that is not probative or fundamentally fair, such as an unproven criminal charge, to find that Mr. Reyes is a

danger to the public. *See Montero v. INS*, 124 F.3d 381, 386 (2d Cir. 1997) (holding that due process prohibits the consideration of evidence in immigration proceedings that is not probative or fundamentally fair); *Matter of Velasquez*, 25 I. & N. Dec. 680, 683 (BIA 2012) ("[T]he test for admission of evidence in immigration proceedings is simply "whether the evidence is probative and its admission is fundamentally fair.").

10.     Consequently, Mr. Reyes should be granted injunctive relief or relief in the nature of mandamus or prohibition to prevent his illegal re-detention by ICE pursuant to the BIA's legally flawed decision. *See Zabaleta*, 331 F. Supp. 3d at 72 (granting habeas relief and remanding to the BIA for new decision where BIA bond revocation contained legal errors); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762 (N.D. Cal. 2019) (granting preliminary injunction where IJ bond decision violated due process because decision "misrepresented some of Petitioner's evidence and failed to consider other significant evidence"); *Kharis v. Sessions*, 2018 WL 5809432 (N.D. Cal. Nov. 6, 2018), appeal dismissed, 2019 WL 1468148 (9th Cir. Feb. 14, 2019) (granting habeas relief and remanding to IJ for new decision where BIA bond decision contained due process errors); *Torosyan v. Nielsen*, 2018 WL 5784708 (C.D. Cal. Sept. 27, 2018), report and recommendation adopted, 2018 WL 6167918 (C.D. Cal. Oct. 26, 2018) (granting preliminary injunction and ordering bond to be reinstated where the IJ bond vacated by the BIA violated the APA).

## PARTIES

11.     Petitioner-Plaintiff Jose Mauricio Reyes is a citizen of El Salvador who has resided in the United States since March 2008 and presently resides in Glen Clove, New York. He is subject to ongoing removal proceedings before the immigration court at 26 Federal Plaza, New York, NY, and is at liberty pursuant to a bond issued by the IJ that was recently revoked by the BIA of the Executive Office of Immigration Review.

12.     Respondent-Defendant James McHenry is named in his official capacity as the Director of the Executive Office for Immigration Review ("EOIR").  He is responsible for the oversight of immigration proceedings, including oversight of immigration judges and the Board of Immigration Appeals, and ensuring that these proceedings are conducted in accordance with all applicable laws.  His address is 5107 Leesburg Pike, Falls Church, Virginia 22041.

13.     Respondent-Defendant Garry D. Malphrus is named in his official capacity as Member of the Board of Immigration Appeals within EOIR.  He is responsible for reviewing decisions by IJs, interpreting and applying the immigration laws, and ensuring that the immigration laws are fairly and uniformly applied. Respondent-Defendant Malphrus is one of three BIA members who signed the decision revoking Petitioner's immigration bond.  His address is 5107 Leesburg Pike, Falls Church, Virginia 22041.

14.     Respondent-Defendant Edward F. Kelly is named in his official capacity as Member of the Board of Immigration Appeals within EOIR.  He is responsible for reviewing decisions by IJs, interpreting and applying the immigration laws, and ensuring that the immigration laws are fairly and uniformly applied. Respondent-Defendant Kelly is one of three BIA members who signed the decision revoking Petitioner's immigration bond.  His address is 5107 Leesburg Pike, Falls Church, Virginia 22041.

15.     Respondent-Defendant Hugh G. Mullane is named in his official capacity as a Member of the Board of Immigration Appeals within EOIR.  He is responsible for reviewing certain decisions IJs, interpreting and applying the immigration laws, and ensuring that the immigration laws are fairly and uniformly applied. Respondent-Defendant Mullane is one of three BIA members who signed the decision revoking Petitioner's immigration bond.  His address is 5107 Leesburg Pike, Falls Church, Virginia 22041.

16.     Respondent-Defendant William P. Barr is named in his official capacity as the Attorney General of the United States.  In this capacity, he oversees the administration of the immigration laws by EOIR, pursuant to 8 U.S.C. § 1103(g).  He routinely transacts business in this District and is legally responsible for administering Petitioner's removal and custody redetermination proceedings and the standards used in those proceedings.  His office is located at the U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

17.     Respondent-Defendant Thomas Decker is named in his official capacity as Director of the New York Field Office for ICE within the Department of Homeland Security ("DHS").  In this capacity, he is responsible for the administration of immigration laws, execution of detention and removal determinations, and bond revocations concerning individuals within the jurisdiction of the New York Field Office for ICE.  Respondent-Defendant Decker's office is located at 26 Federal Plaza, New York, NY 10278.

## JURISDICTION

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because the matter in controversy arises under the Fifth Amendment to the U.S. Constitution.  The Court also has subject matter jurisdiction pursuant to the Mandamus Act (28 U.S.C. § 1361), the Administrative Procedure Act (5 U.S.C. § 701, *et seq.*), and the All Writs Act (28 U.S.C. § 1651).  Jurisdiction lies to grant declaratory relief pursuant to the Declaratory Judgment Act (28 U.S.C. § 2201).

19.     The United States has waived sovereign immunity for purposes of this case.  *See Reyes v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998) ("[S]overeign immunity is waived by the Administrative Procedure Act" when "the complaint seeks only equitable relief"); *see also* 5 U.S.C. §§ 702, 706 (providing the right to judicial review and defining

the scope of review).  Moreover, sovereign immunity does not bar claims against federal officials seeking to prevent future violations of federal law.

20.     Finally, this Court has jurisdiction over challenges to non-discretionary aspects of immigration custody decisions.  *See Nielsen v. Preap*, 139 S. Ct. 954, 961 (2019) (holding that federal courts have jurisdiction over challenges to non-discretionary custody decisions under 8 U.S.C. § 1226); *see also Zabaleta v. Decker*, 331 F. Supp. 3d 67, 72 (S.D.N.Y. 2018) (holding that district court had jurisdiction over claim that BIA's reversal of bond under 8 U.S.C. § 1226(a) violated due process); *Bogle v. DuBois*, 236 F. Supp. 3d 820, 822 (S.D.N.Y. 2017) (holding that 8 U.S.C. § 1226(e) did not deprive district court of jurisdiction over "[c]laims of constitutional infirmity in the procedures followed at a[n immigration] bond hearing").

## VENUE

21.     Venue is proper in the Southern District of New York under 28 U.S.C. §§ 1391(b) and (e) because one or more of Respondents-Defendants' places of business is in this District and a substantial part of the events relevant to this claim occurred or will occur within this District. Petitioner was arrested by ICE's New York Field Office located within this District, was granted bond by the IJ within this District, and is subject to ongoing removal proceedings within this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

22.     There is no statutory requirement of exhaustion of administrative remedies where a noncitizen challenges the lawfulness of his immigration detention.  *See Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014); *Louisaire v. Muller*, 758 F. Supp. 2d 229, 234 (S.D.N.Y. 2010); *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009).

23.     Nonetheless, "[t]he Board of Immigration Appeals . . . is the highest administrative

body for interpreting and applying United States Immigration Laws." *See* "Board of Immigration Appeals" (accessed Sept. 17, 2019).[1] Thus, there is no further administrative review that Petitioner could pursue.

## STATEMENT OF FACTS

24.     Petitioner, Jose Mauricio Reyes, is a 28-year-old native of El Salvador and the father of two U.S. citizen children, a three-year-old and a one-year-old.  He has lived in Glen Cove, New York, since he first entered the United States in March 2008.  Mr. Reyes has always served as the primary financial provider for his two children, and he lived with his children and their mother, Margarita Cruz, prior to his arrest by ICE.  Since the time of his release from ICE custody nearly nine months ago, Ms. Cruz has abandoned her children, and Mr. Reyes is now their sole custodian and caretaker.

**Mr. Reyes's Arrest and Bond Proceedings**

25.     In June 2018, Mr. Reyes was arrested for the first and only time, after Ms. Cruz called the police and alleged that Mr. Reyes hit her.  Following his arrest, the District Attorney offered Mr. Reyes a plea to disorderly conduct under New York Penal Law § 240.20(1), a non-criminal violation, with a sentence of time served and a "limited" order of protection that allowed full contact with Ms. Cruz and their two children.[2]  The criminal court accepted this resolution, even allowing Mr. Reyes to visit with Ms. Cruz and their children in the courtroom immediately following his plea.

26.     On June 26, 2018, immediately following the resolution of this matter, ICE arrested Mr. Reyes and initiated removal proceedings.  *See* ECF 1-1 (Form I-830 and Notice to Appear).

---

[1] *Available at* https://www.justice.gov/eoir/board-of-immigration-appeals-bios#TemporaryBoardMembers.
[2] A limited order of protection simply prohibits future unlawful conduct against the protected party, but does not restrict lawful contact and communication.

ICE detained Mr. Reyes at the Hudson County Correctional Center ("HCCC").

27.     On December 12, 2018, almost six months after his detention by ICE, the IJ held a bond hearing for Mr. Reyes. In support of his release on bond, Mr. Reyes's counsel provided substantial documentary evidence, including the certificate of disposition in his criminal case, the limited order of protection, a letter from Ms. Cruz addressing the incident and stating that she did not fear Mr. Reyes, family photographs, numerous letters of support, and tax returns, among other things.  *See* ECF 1-2 (Bond Submission); ECF 1-3 (Supp. Bond Submission).

28.     Mr. Reyes's counsel also provided a letter from licensed social worker, Zoe Joly, stating that although Mr. Reyes "did not identify drinking alcohol as a recurring problem, he said that he would welcome the opportunity to reflect on his actions and explore his behavior via individual counseling upon his release to the community."  *See* ECF 1-2 (Social Work Letter). Accordingly, Ms. Joly arranged that, if Mr. Reyes was released under bond, he could begin individual therapy at the Melillo Center, "a multiservice, outpatient clinic located in Glen Cove, New York," where Ms. Joly confirmed that "they are accepting new referrals at this time and have Spanish-speaking therapists on staff." *Id.*

29.     Evaluating this evidence, the IJ determined that Mr. Reyes met his burden to establish that he did not present a danger to the community and set an $8000 bond.  *See* ECF 1-4 (IJ Opinion & Order) ("IJ Op.").

30.     In her decision, the IJ noted several mitigating factors regarding Mr. Reyes's arrest, including the fact that Mr. Reyes was only arrested a single time in his ten-plus years in the United States; that Mr. Reyes disputed the assault allegation; that the case was resolved without a criminal conviction; and that the criminal court saw fit to grant him a limited order of protection that allowed full contact with his children and their mother, even permitting Mr. Reyes "to meet with

Ms. Cruz and their children on the day he pled guilty." *Id.* at 2-3.  She further noted that Ms. Cruz, in her letter to the immigration court, described Mr. Reyes as "'hard-working and respectful'" and "'a caring and responsible father,'" and stated that he "'raise[s] his kids . . . with love and responsibility.'"  *Id.* at 3 (quoting ECF 1-3 (Letter from Ms. Cruz)).

31.     The IJ also found that Mr. Reyes "is committed to becoming a better man" by planning to attend an outpatient alcohol program if released, even though he did not believe he struggled with an alcohol problem.  *Id.* (citing ECF 1-3 (Social Work Letter)).

32.     Finally, the IJ noted that "in light of Respondent's equities in this country," an $8,000 bond was sufficient to mitigate any flight risk concerns.  *Id.*  The IJ based this decision on Mr. Reyes's strong community ties in New York, including his two young children, one of whom was born with a serious heart condition, and the face that he has been residing in Glen Cove for over ten years.  *Id.*  She also noted that Mr. Reyes had two applications for relief from removal pending before the court.  *Id.*

33.     Since his release, Mr. Reyes has had no additional arrests.  He and Ms. Cruz have separated, and Mr. Reyes is now the sole provider and caretaker for his two children.  In addition to working full time and caring for his children, Mr. Reyes attended all of his immigration hearings and scheduled a merits hearing on his applications for cancellation of removal and asylum for June 2021.  *See* ECF 1-6 (Notice of Hearings).

**The BIA's Unlawful Bond Decision**

34.     DHS filed an appeal of the IJ's bond decision on January 8, 2019.

35.     On August 27, 2019, the BIA sustained DHS's appeal of the IJ's grant of bond, vacated the IJ's decision, and ordered Mr. Reyes detained without bond.  *See* ECF 1-5 (BIA Opinion & Order) ("BIA Op.").

36.     To support its decision vacating Mr. Reyes's bond, the BIA made a *de novo* factual finding that Mr. Reyes "failed to acknowledge his abuse of alcohol," BIA Op. at 2, even though the IJ never found that Mr. Reyes had an alcohol abuse problem, *see* IJ Op. at 2-3.  It did not consider the evidence on which the IJ relied in crediting Mr. Reyes's denial of substance abuse. *See id.* at 3 (referencing Mr. Reyes's willingness to attend an alcohol program, despite his belief that he did not struggle with alcohol abuse, and citing the Social Work Letter); ECF 1-3 (Social Work Letter noting that Mr. Reyes denied struggling with alcohol but agreed to engage in treatment to improve himself nonetheless).

37.     The BIA also made *de novo* factual findings by stating that Mr. Reyes was guilty of a "domestic violence crime" and referencing the "recency and seriousness of [Mr. Reyes's] *domestic violence offense*," BIA Op. at 1, 2 (emphasis added), even though Mr. Reyes disputed, and never pleaded guilty to, the initial assault charge, and even though the IJ did not find that he had committed the conduct underlying that charge.  In making these findings, the BIA relied only upon the charge listed on the certificate of disposition.  *See id.* at 1.  The BIA did not consider the evidence on which the IJ relied in evaluating the circumstances of Mr. Reyes's arrest—such as the fact that the case was resolved in a non-criminal plea, that he was permitted to maintain full contact with his ex-partner and their children, and that he was willing to attend counseling if released from ICE custody.  *See* IJ Op. at 2-3.

**Imminent Risk of Re-Arrest, Separation from His Two U.S. Citizen Children, and Imprisonment in Unsafe Conditions**

38.     Mr. Reyes is at imminent risk of re-arrest by ICE pursuant to the BIA's order. Based on the experience of Mr. Reyes's immigration counsel on other cases, ICE is likely to re-arrest Mr. Reyes pursuant to the BIA decision within 1 to 4 weeks of the date of that order.

39.     If he is rearrested, Mr. Reyes will be separated from his two young children, for

whom he is responsible as a single father.  Since being released from ICE custody, Mr. Reyes has been his children's sole provider and caretaker.  Mr. Cruz, the children's mother, has not been involved with the children since that time and indicated that she will not have further involvement. Should Mr. Reyes be re-detained, therefore, his children may be subjected to the care of the state.

40.     In addition, Mr. Reyes will likely be again imprisoned in one of the three New Jersey county jails where most immigration detainees with removal cases venued in New York are held: HCCC, Bergen County Jail ("BCJ"), and Essex County Correctional Facility ("ECCF").  Mr. Reyes was previously detained by ICE in HCCC but could be detained at any of the three jails.

41.     These are not specialized civil detention facilities; these are jails in which immigrants are housed under the same, and often worse, conditions as criminal inmates.  The deplorable conditions of immigration detention in all three facilities have also been widely documented.

42.     For example, in February 2017, New York Lawyers for the Public Interest (NYLPI) published a report detailing serious deficiencies in the medical care provided to immigration detainees in all three of the facilities. *See* NYLPI, *Detained and Denied: Healthcare Access in Immigration Detention* (2017).[3]  Then, in February 2018, Human Rights First released a report identifying multiple instances of inadequate medical care specifically at HCCC and concluding that the jail's intake screenings for medical problems were superficial and did not adequately address chronic medical conditions.  *See* Human Rights First, *Ailing Justice: New Jersey, Inadequate Healthcare, Indifference, and Indefinite Confinement in Immigration Detention* (Feb. 2018);[4] *see also* Office of the Inspector General ("OIG"), *Concerns about ICE Detainee Treatment and Care at Detention Facilities*, 3 (Dec. 11, 2017) (describing an unannounced inspection of

---

[3] *Available at* https://nylpi.org/wp-content/uploads/2017/02/HJ-Health-in-Immigration-Detention-Report_2017.pdf.
[4] *Available at* https://www.humanrightsfirst.org/sites/default/files/Ailing-Justice-NJ.pdf.

HCCC that found that conditions "undermine the protection of the detainees' rights, their humane treatment, and the provision of a safe and healthy environment.").[5]  Moreover, detainees at BCJ recently experience a Mumps outbreak, which resulted in a quarantine that lasted more than 30 days and significantly impeded the detainees' ability to access their attorneys.  This is particularly problematic because inmates in all three facilities are unable to receive incoming calls and have no free phone access to legal counsel.  *Id.* at 12, 15, 17.

43.     Further, various reports have documented inappropriate searches, excessive force, and overly punitive disciplinary procedures in these facilities.  *Id.* at 13 ("An internal inspection by the ICE Office of Detention Oversight documented deficiencies including improper strip searches . . . and physical abuse of detainees."); Gonzalez, Sarah, WNYC, "Alone and Isolated, the Punishment Piles on for Immigrant Detainees" (Nov. 9, 2015) ("Detainees are placed in solitary confinement for non-violent—and at times perplexing—reasons.  And the length of time a detainee spends in solitary seems to be arbitrary.").

44.     Both HCCC and BCJ are also chronically overcrowded.  As of March 2019, BCJ was reported to have a capacity of 128 beds, and yet was holding an average of 216 detainees at any given time.  *See Behind Bard in the Empire State: An Assessment of the Immigration Detention of New Yorkers*, 12 (2019).[6]  HCCC has a capacity of 476 beds but holds, on average, 646 detainees.  *Id.* at 17.

45.     Finally, in July 2018, an unannounced inspection of ECCF by the OIG revealed expired and moldy food being served to detainees, unsafe food handling practices including "open packages of raw chicken [that] leaked blood all over refrigeration units," facility leaks that "can

---

[5] *Available at* https://www.oig.dhs.gov/sites/default/files/assets/2017-12/OIG-18-32-Dec17.pdf.
[6] *Available at* https://d1jiktx90t87hr.cloudfront.net/323/wp-content/uploads/sites/2/2019/03/State-of-Immigration-Detention-of-NYers-v5.pdf.

cause mold and mildew growth . . . leading to serious health issues for detainees, including allergic reactions and persistent illnesses," unsanitary shower stalls in all detainee housing units, and no outdoor space for detainees. *See* OIG, "Issues Requiring Action at the Essex County Correctional Facility in Newark, New Jersey" 4, 7-9 (Feb. 13, 2019).[7]

46.     These issues have been documented by immigrant advocacy organizations for more than a decade. *See, e.g.*, American Civil Liberties Union of New Jersey, *Behind Bars: The Failure of the Department of Homeland Security to Ensure Adequate Treatment of Immigration Detainees in New Jersey* (2007).[8]

47.     Indeed, these issues are systemic. Reports show that ICE has a pervasive pattern of failing to ensure that its detention facilities provide humane and safe conditions to immigration detainees. For example, a 2019 report by the OIG concluded that ICE "does not adequately hold detention facility contractors accountable for not meeting performance standards," "issued waivers to facilities with deficient conditions, seeking to exempt them from complying with certain standards," and "does not adequately share information about ICE detention contracts with key officials." *See* OIG, *ICE Does Not Fully Use Contracting Tools to Hold Detention Facility Contractors Accountable for Failing to Meet Performance Standards*, 1 (Jan. 29, 2019).[9]

48.     Moreover, ICE fails to remedy detention conditions issues even when identified through its own inspections process. In 2018, the OIG concluded that despite ICE's system of detention facility inspections, "neither the inspections nor the onsite monitoring ensure consistent compliance with detention standards, nor do they promote comprehensive deficiency corrections," and that "ICE does not adequately follow up on identified deficiencies or consistently hold

---

[7] *Available at* https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-20-Feb19.pdf.
[8] *Available at* https://www.aclu-nj.org/files/9613/1540/4573/051507DetentionReport.pdf.
[9] *Available at* https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf.

facilities accountable for correcting them, which further diminishes the usefulness of inspections."

*See* OIG, *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements*, 1 (June 26, 2018).

49.     Thus, not only is Mr. Reyes at imminent risk of re-arrest and separation from his young children, he is also at grave risk of imprisonment in plainly unsafe conditions.

## STATUTORY AND REGULATORY FRAMEWORK

**Arrest and Detention by ICE**

50.     ICE initiates removal proceedings against alleged noncitizens by preparing a Notice to Appear ("NTA"), which must state the factual allegations and charged grounds of removability. 8 U.S.C. § 1229(a)(1); 8 C.F.R. § 239.1.   ICE arrests the subjects of NTAs pursuant to administrative warrants issued by the agency itself.  8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(b)(1).

51.     ICE may detain these arrestees during the pendency of their removal proceedings or release them on bond or parole.  8 U.S.C. §§ 1226(a)(1)-(2); 8 C.F.R. § 236.1(c)(8). Any such release may be revoked by ICE.  8 U.S.C. § 1226(b) ("The Attorney General at any time may revoke a bond or parole authorized under subsection (a), re-arrest the alien under the original warrant, and detain the alien.").

52.     However, as the government has previously acknowledged, 8 U.S.C. § 1226(b) does not give DHS unfettered discretion to re-arrest individuals released from immigration custody.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("[N]otwithstanding the breadth of [§ 1226(b)'s] language . . . [t]he BIA has held that 'where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance.'") (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981).

53.     Accordingly, DHS has a policy of only re-arresting prior detainees where there are material changed circumstances. *Id.* at 1197 ("According to government counsel, DHS has incorporated [*Matter of Sugay*] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer. 'Thus,' says the government, 'DHS generally only re-arrests an alien pursuant to § 1226(b) after a material change in circumstances.'") (quoting Defendant's Second Supplemental Brief at 1, Dkt. No. 90).

**EOIR Review of ICE Custody Determinations**

54.     Upon request by the detainee, an IJ may review ICE custody determinations under 8 U.S.C. § 1226(a). *See* 8 C.F.R. § 1003.19(a) ("Custody and bond determinations made by [ICE] pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."). This custody review occurs through a bond hearing held before the immigration court. 8 C.F.R. § 1003.19(c).

55.     Before granting bond, the IJ must consider whether the individual seeking release is either (i) a danger to the community or (ii) a flight risk. *See Matter of Patel*, 15 I. & N. Dec. 666, 666 (BIA 1976) ("An alien generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security, or that he is a poor bail risk.") (internal citation omitted). The IJ's bond ruling must be based on "information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service." 8 C.F.R. § 1003.19. Unreliable or non-probative evidence, however, may not be considered in immigration bond hearings. *See Montero*, 124 F.3d at 386 (due process prohibits the consideration of evidence in immigration proceedings that is not probative or fundamentally fair); *Matter of Velasquez*, 25 I. & N. Dec. at 683 ("[T]he test for admission of evidence in immigration proceedings is simply

"whether the evidence is probative and its admission is fundamentally fair.").

56.     The immigration judge "has broad discretion in deciding the factors that he or she may consider in custody redeterminations . . . [and] may choose to give greater weight to one factor over others, as long as the decision is reasonable." *In Re Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). However, these factors should include: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States; (4) the immigrant's employment history; (5) the immigrant's record of appearance in court; (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. *Id.* When considering what weight to give to a criminal offense, the IJ should "consider not only the nature of a criminal offense but also the specific circumstances surrounding the alien's conduct." *Matter of Siniauskas*, 27 I. & N. Dec. 207, 208 (BIA 2018). The inquiry should be focused on prospective, or future, dangerousness or risk of flight. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011).

57.     Bond decisions made by IJs may be appealed to the BIA by either the detainee or ICE. 8 C.F.R. § 1003.38(a); *id.* § 1003.19(f); *id.* § 1003.1(b)(7). The BIA is authorized to review "questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo." 8 C.F.R. § 1003.1(d)(3)(ii). However, the BIA is expressly prohibited from "engag[ing] in *de novo* review of findings of fact determined by an immigration judge." 8 C.F.R. § 1003.1(d)(3)(i); *see also id.* § 1003.1(d)(3)(iv) ("Except for taking administrative notice of commonly known facts such as current events or the contents of official

documents, the Board will not engage in factfinding in the course of deciding appeals. A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand.").

58.     In addition, the BIA may only review the IJ's factual findings for clear error.  8 C.F.R. § 1003.1(d)(3)(i) ("Facts determined by the [IJ] . . . shall be reviewed only to determine whether the findings of the [IJ] are clearly erroneous.").

59.     Predictive determinations, such as whether an individual will flee or commit a dangerous act in the future, are questions of fact.  *See Matter of Z-Z-O-*, 26 I. & N. Dec. 586, 590 (BIA 2015) (holding that an "[i]mmigration Judge's forecasting of future events constitutes a factual finding").  Thus, an IJ's factual findings concerning whether an immigration detainee presents a future danger to the community or flight risk may not be disturbed unless the BIA determines that they are clearly erroneous.  *See id.*; *cf. United States v. English,* 629 F.3d 311, 319 (2d Cir. 2011) (articulating that the Second Circuit reviews findings as to a criminally accused's risk of flight and potential danger to the community for clear error).

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:
### THE BIA'S DECISION VIOLATES THE ADMINISTRATIVE PROCEDURE ACT, 5   U.S.C. § 706(2)

60.     Petitioner re-alleges and incorporates by reference paragraphs 1 through 59 of this Petition as if set forth fully herein and does so for all additional counts.

61.     Under the Administrative Procedure Act, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."  5 U.S.C. § 704.  Relevant here, the reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be--(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . . ."  5 U.S.C. §§ 706(2)(A)-(D).

62.     The BIA is the highest administrative body responsible for interpreting the immigration laws, and there is no right to administratively appeal of BIA custody rulings.  Thus, the BIA's bond decision in Mr. Reyes's case constituted a "final agency action."  5 U.S.C. § 704.

63.     The BIA's decision was arbitrary and capricious, an abuse of discretion, and in violation of federal regulations, agency policy, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution because it made *de novo* factual findings contrary to its jurisdiction, because it reversed factual findings by the IJ that were not clearly erroneous nor based on substantial evidence, because it assumed the truth of certain evidence that was not probative or fundamentally fair, and because it egregiously mischaracterized the factual record in Mr. Reyes's bond proceedings.

64.     Federal regulations and published agency precedent prohibit the BIA from engaging in *de novo* factfinding.  *See* 8 C.F.R. § 1003.1(d)(3)(i) ("The Board will not engage in *de novo* review of findings of fact determined by an immigration judge."); 8 C.F.R. § 1003.1(d)(3)(iv) ("[T]he Board will not engage in factfinding in the course of deciding appeals."); *see also In Re S-H-, et al., Respondents*, 23 I. & N. Dec. 462, 464-65 (BIA 2002). Rather, where "further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge."  8 C.F.R. §§ 1003.1(d)(3)(iv).

65.     Nevertheless, the BIA made its own *de novo* factual findings that Mr. Reyes: (1) suffered from alcohol abuse; and (2) had committed a "domestic violence offense."  *See* BIA Op. at 2.  These findings were not made by the IJ and, therefore, in violation of federal regulations.

66.     Federal regulations also prohibit the BIA from reversing IJ factual findings unless the findings are "clearly erroneous."  8 C.F.R. § 1003.1(d)(3)(i) ("Facts determined by the [IJ] . . . shall be reviewed only to determine whether the findings of the [IJ] are clearly erroneous.").

67.     Here, the BIA accurately stated this standard of review but rather than meaningfully applying the standard, committed legal error by simply making new factual findings.  To compound that error, the BIA's *de novo* factual findings were based on unambiguous mischaracterizations of the factual record and were not supported by substantial evidence, which also constitutes reviewable legal error. *See, e.g.*, *Xiao Ji Chen*, 471 F.3d at 329 (noting that unambiguously erroneous factfinding constitutes legal error); *Castro v. Holder*, 597 F.3d 93, 99 (2d Cir.2010) (substantial evidence standard "requires a certain minimum level of analysis from the IJ and BIA, as well as some indication that the IJ considered material evidence supporting a petitioner's claim"); *Zabaleta*, 331 F. Supp. 3d at 72 (vacating and remanding BIA bond decision that "'unambiguously mischaracterized a central element of the record'") (quoting *Liu*, 508 F. 3d at 722); *Lopez Reyes*, 362 F. Supp. 3d at 773 (granting preliminary injunction where IJ bond decision violated due process because it "misrepresented some of Petitioner's evidence and failed to consider other significant evidence"); *Kharis*, 2018 WL 5809432, at *9 (vacating and remanding BIA bond decision where "the BIA's decision does not mention highly probative evidence on which [petitioner] relied") (internal quotation marks omitted).

68.     Specifically, the BIA found that Mr. Reyes "failed to acknowledge his abuse of alcohol," BIA Op. at 2, even though the IJ never found that Mr. Reyes had an alcohol abuse problem, Ms. Cruz did not describe an ongoing alcohol problem, Mr. Reyes had no other criminal history that would indicate an alcohol problem, and Mr. Reyes expressed a willingness to reflect on his alcohol use and to attend alcohol counseling.  *See* ECF 1-3 (Social Work Letter noting that

Mr. Reyes denied struggling with alcohol but was willing to reflect on his alcohol use and agreed to engage in treatment to improve himself).  The BIA also found that Mr. Reyes had committed a "domestic violence offense" by relying only upon the charge listed on the certificate of disposition and without considering material evidence, including the fact that Mr. Reyes denied any allegations of violence, that the case was resolved in a non-criminal disposition, that he was permitted to maintain full contact with his ex-partner and their children, and that he was willing to attend counseling if released from ICE custody.  *See* IJ Op. at 2-3.

69.     The BIA's heavy reliance on the unproven assault charge also violated the Due Process Clause because this is not probative or fundamentally unfair evidence.  *See Montero*, 124 F.3d at 386 (holding that due process prohibits the consideration of evidence in immigration proceedings that is not probative or fundamentally fair); *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993 (N.D. Cal. 2018) (holding that IJ violated immigrant detainee's due process rights in bond hearing by basing dangerousness finding on evidence of an unproven drug sale allegation).

70.     The BIA's decision is therefore a final agency action that violates 5 U.S.C. §§ 706(2)(A)-(D).  Consequently, this Court should hold the BIA's ruling unlawful and set it aside pursuant to the APA.  *See Torosyan v. Nielsen*, No. 218CV5873PSGSK, 2018 WL 5784708, at *9 (C.D. Cal. Sept. 27, 2018), report and recommendation adopted, No. 218CV5873PSGSK, 2018 WL 6167918 (C.D. Cal. Oct. 26, 2018) (granting preliminary injunction ordering bond to be reinstated where BIA vacated bond set by IJ in violation of the APA).

**SECOND CAUSE OF ACTION:**
**THE BIA'S DECISION VIOLATES THE DUE PROCESS CLAUSE**

71.     The BIA's decision should be held unlawful because it violates the procedural component of the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

72.     The Due Process Clause applies to all persons in the United States, "whether their

presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process constrains governmental decisions that deprive individuals of property or liberty interests within the meaning of the Due Process Clause. *See Matthews v. Eldridge*, 424 U.S. 319 (1976). At a minimum, due process requires that decisions in immigration proceedings be based on fundamentally fair evidence. *See Montero*, 124 F.3d at 386 (due process prohibits the consideration of evidence in immigration proceedings that is not probative or fundamentally fair).

73.     Mr. Reyes has a significant liberty interest in ensuring that the BIA fairly and lawfully adjudicates DHS appeal of the IJ's decision granting him bond. The BIA violated that interest by holding Mr. Reyes to be a danger based on *de novo* factual findings, applying incorrect legal standards, and unambiguously mischaracterizing the factual record. *See Zabaleta*, 331 F. Supp. 3d at 72; *Lopez Reyes*, 362 F. Supp. 3d at 773; *Obregon*, 2017 WL 1407889, at *7.

74.     In addition, the decision violated the Due Process Clause because, in relying on a charge listed in the certificate of disposition as if it occurred, the BIA contravened binding and long-standing Second Circuit precedent regarding reliance on unproven criminal charges. *See, e.g.*, *Padmore v. Holder*, 609 F.3d 62, 69-70 (2d Cir. 2010) (holding that the BIA "may not base its decision denying relief upon the assumption that the facts contained in [charging] documents are true."); *James v. Mukasey*, 522 F.3d 250, 257 (2d Cir. 2008) (admonishing the agency for crediting a factual allegation in a charging instrument connected with charges that were dismissed); *United States v. Juwa*, 508 F.3d 694, 700-01 (2d Cir. 2007) (noting that it is "axiomatic" that a charging document is not evidence of guilt and does not serve an "evidentiary function"). Indeed, the BIA itself has denounced overreliance on unproven factual allegations. *See Matter of Arreguin*, 21 I. & N. Dec. 38, 42 (BIA 1995) ("Just as we will not go behind a record of conviction

to determine the guilt or innocence of an alien, so we are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein.").

75. The BIA's reliance on evidence that was not probative or fundamentally fair to find that Mr. Reyes was dangerous constitutes a violation of the Due Process Clause that this Court should hold unlawful and set aside.

### THIRD CAUSE OF ACTION:
### MR. REYES IS ENTITLED TO A WRIT OF MANDAMUS

76. This Court should issue a writ of mandamus.

77. Under the Mandamus Act, 28 U.S.C. § 1361, issuance of a mandamus is proper to compel a federal agency to perform a duty if (1) the petitioner has a clear right to the relief requested; (2) the respondent has a clear, non-discretionary duty to act; and (3) there is no other adequate remedy available. *See* 28 U.S.C. § 1361; *Ceken v. Chertoff*, 536 F. Supp. 2d 211, 216 (D. Conn. 2008); *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008).

78. Mr. Reyes has a clear right to relief to have his bond appeal adjudicated under appropriate and lawful standards. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19 (describing the scope of IJ's review of ICE's initial custody determinations); 8 C.F.R. § 1003.1 (outlining BIA authority to review IJ decisions). By issuing an unlawful order that Mr. Reyes be detained without bond, Respondents-Defendants failed to perform their non-discretionary duties in accordance with the law: namely, to apply appropriate and lawful standards in adjudicating DHS's appeal. *See* 8 C.F.R. § 1003.1. Finally, no other adequate remedy is available because no further appeal may be taken from a BIA custody decision.

79. Mr. Reyes has suffered as a result of Respondents-Defendants' actions and is entitled to immediate injunctive relief to avoid further injury. This Court should therefore order that the BIA reinstate the unlawfully-vacated IJ bond decision.

## FOURTH CAUSE OF ACTION:
## MR. REYES IS ENTITLED TO A WRIT OF PROHIBITION

80.     This Court should issue a writ prohibiting ICE from re-arresting Mr. Reyes.

81.     A writ of prohibition is available where the regular judicial-review process is inadequate to address a petitioner's claim that a court or administrative agency has usurped its power and the right to relief is clear and undisputable.  *See In re Wainwright*, 678 F.2d 951, 953 (11th Cir. 1982); *see also* 28 U.S.C. § 1651(a) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

82.     Here, issuance of a writ of prohibition is appropriate because Mr. Reyes has no other remedy to prevent ICE from acting in accordance with the BIA's unlawful order that he should be detained without bond, even though the BIA acted outside of its prescribed jurisdiction by failing to follow federal regulations, agency policy, and the Due Process Clause in vacating Mr. Reyes's bond grant.  *See Sampson v. Murray*, 415 U.S. 61, 74 (1974) (noting that district court had authority to review federal agency action once that action became final and where the administrative decision "does in fact fail to conform to applicable regulations"); *Ex parte Republic of Peru*, 318 U.S. 578, 584 (1943) ("The common law writs, like equitable remedies, may be granted or withheld in the sound discretion of the Court, and are usually denied where other adequate remedy is available.") (internal citations omitted).

83.     Moreover, Mr. Reyes's release on the bond set by the IJ constitutes a heightened liberty interest that cannot be revoked without sufficient procedural protections.  *See Lopez v. Sessions*, 2018 WL 2932726, at *11 (S.D.N.Y. June 12, 2018) (holding that immigrant detainee released from custody and then re-detained by ICE had a "clearly established" liberty interest that could not be revoked absent procedural protections); *Saravia v. Sessions*, 280 F. Supp. 3d 1168,

1196 (N.D. Cal, 2017) (holding that minors previously released to sponsors by immigration authorities have a heightened interest in that liberty which cannot be revoked without "probable cause to believe that, notwithstanding [the] prior determination, the minor is now a danger to himself or the community, or a flight risk").

84.     As such, Mr. Reyes's arrest for the purposes of civil immigration detention should be prohibited absent a determination by the BIA, made in accordance with all applicable law, that the evidence before the court proves, by clear and convincing evidence, that Petitioner poses a future danger to the public or risk of flight.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Hold unlawful and set aside the BIA's decision ordering that Petitioner be held without bond;

3) Order that Respondents-Defendants reinstate the 2018 IJ decision granting bond;

4) Enjoin Respondents-Defendants from arresting Petitioner for the purposes of civil immigration detention absent a determination by the BIA, made in accordance with all applicable law, that the evidence before the court proves, by clear and convincing evidence, that Petitioner poses a future danger to the public or risk of flight;

5) Award Petitioner his costs and reasonable attorney's fees in this action as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute; and

6) Grant such further relief as the Court deems just and proper.

Dated: September 18, 2019
Brooklyn, New York

Respectfully submitted,

 /s/ Zoey Jones

Zoey Jones, Esq.
Brooklyn Defender Services
156 Pierrepont Street, 1st Floor
Brooklyn, NY 11201
P: 646-787-3307
F: 347-325-9111
E: zjones@bds.org

*Counsel for Petitioner*

## **VERIFICATION**

I, Zoey Jones, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that, on information and belief, the factual statements in the foregoing Petition for Writ of Prohibition and Mandamus and Complaint for Declaratory and Injunctive Relief are true and correct.


Dated: September 18, 2019                        Respectfully submitted,
Brooklyn, New York

                                                 /s/ Zoey Jones
                                                _____

                                                 Zoey Jones, Esq.
                                                 Brooklyn Defender Services
                                                 156 Pierrepont Street, 1ˢᵗ Floor
                                                 Brooklyn, NY 11201
                                                 P: 646-787-3307
                                                 F: 347-325-9111
                                                 E: zjones@bds.org

                                                 *Counsel for Petitioner*