UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE MAURICIO REYES,

                              Petitioner,

                    -v.-

JEAN KING, *as Acting Director, Executive Office for
Immigration Review*; GARRY D. MALPHRUS, *as
Member, Board of Immigration Appeals, Executive
Office for Immigration Review*; EDWARD F. KELLY,
*as Member, Board of Immigration Appeals, Executive
Office for Immigration Review*; HUGH G. MULLANE,
*as Member, Board of Immigration Appeals, Executive
Office for Immigration Review*; MERRICK B.
GARLAND, *as Attorney General, U.S. Department of
Justice*; and THOMAS DECKER, *as Field Office
Director, New York City Field Office, U.S.
Immigration & Customs Enforcement*,

                              Respondents.

19 Civ. 8674 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

        Petitioner Jose Mauricio Reyes brings this action against various officials

involved in administering this country's immigration laws, including Jean King,

Director of the Executive Office for Immigration Review; Garry D. Malphrus,

Edward F. Kelly, and Hugh G. Mullane as Members of the Board of

Immigration Appeals ("BIA"); Attorney General Merrick B. Garland; and

Thomas Decker, Field Office Director of the New York City Office of United

States Immigration and Customs Enforcement ("ICE" and together,

"Respondents" or the "Government"), in order to seek judicial review of the

BIA's decision revoking his bond.[1]  Specifically, Petitioner claims that in vacating an Immigration Judge's ("IJ") determination to grant Petitioner release from ICE custody on bond, the BIA violated the Administrative Procedure Act ("APA"), *codified in part at* 5 U.S.C. ch.5, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution by: (i) failing to apply the correct standard of review to the IJ's findings of fact; (ii) mischaracterizing the factual record; (iii) improperly relying on unproven criminal charges; and (iv) impermissibly placing the burden of proof on Petitioner rather than the Government.  As a result of these alleged errors, Petitioner asks this Court to set aside the BIA's decision and reinstate the IJ's decision.  In the alternative, Petitioner seeks a writ of mandamus ordering the BIA to either reinstate the IJ's bond decision or re-adjudicate his bond request pursuant to the correct legal standard.  Petitioner also seeks a writ of prohibition to prevent the Government from re-detaining him without a pre-detention hearing.

Now before the Court are the parties' cross-motions for summary judgment.  For the reasons that follow, the motions are granted in part and denied in part.

---

[1]     The Clerk of Court is directed to modify the case caption in accordance with the above. Merrick Garland and Jean King have been substituted under Federal Rule of Civil Procedure 25(d) for former respondents William Barr and James McHenry.

### BACKGROUND[2]

#### A.    Factual Background

Petitioner, a native and citizen of El Salvador, claims to have entered the

United States in March 2008.  (AR 62; *see also* AR 104 (listing Petitioner's only

entry into the United States as approximately March 2008)).  Since arriving in

the United States, Petitioner has resided in Glen Cove, New York, where his

family and two children also live.  (*See* AR 63).

After more than a decade in the United States, on June 22, 2018,

Petitioner was arrested for allegedly "slapp[ing] and punch[ing]" his ex-partner,

Margarita Cruz.  (AR 62, 80).  After and as a result of this incident, Petitioner

was charged with third-degree assault and endangering the welfare of a child

(AR 62, 143); he ultimately pleaded guilty to one count of disorderly conduct in

---

[2]    The facts set forth herein are drawn from the Certified Administrative Record ("AR"). (Dkt. #47).  "Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc'y* v. *Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997); *see also Aleutian Cap. Partners, LLC* v. *Hugler*, No. 16 Civ. 5149 (ER), 2017 WL 4358767, at *5 (S.D.N.Y. Sept. 28, 2017) ("[T]he reviewing court may only review evidence produced in the administrative record.").  And as this Court previously indicated in its denial of Petitioner's request for extra-record discovery, this case "rises and falls on whether the BIA applied the proper legal standard to the administrative record."  (Dkt. #52 at 4).  As such, the Court need not reach beyond the administrative record when considering Petitioner's claims brought under the APA and the Fifth Amendment with respect to the BIA's review of the IJ's decision.  The Court will, however, consider Petitioner's declaration (Dkt. #58-1) and notice of his next immigration court hearing (Dkt. #58-2) as may be necessary when deciding Petitioner's claim that due process entitles him to a writ of prohibition.

For ease of reference, the Court refers to the parties' briefing as follows: Respondents' Memorandum of Law in Support of Respondents' Motion for Summary Judgment as "Gov. Br." (Dkt. #56); Petitioner's Memorandum of Law in Opposition to Respondents' Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment as "Pet. Br." (Dkt. #59); Respondents' Reply Memorandum of Law in Further Support of Respondents' Motion for Summary Judgment and Opposition to Petitioner's Cross-Motion for Summary Judgment as "Gov. Reply" (Dkt. #62); and Petitioner's Reply Memorandum of Law in Opposition to Respondents' Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment as "Pet. Reply" (Dkt. #63).

violation of New York Penal Law § 240.20(07).  (AR 62, 80).  In exchange for his plea, Petitioner received a sentence of time served and a "limited" order of protection, the latter of which restrained him from committing any further criminal offenses against Ms. Cruz and his children but did not impose a stay-away command.  (AR 62, 82).

On June 26, 2018, four days after his criminal arrest, ICE arrested Petitioner pursuant to the noncitizen detention provision of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1226(a).  (AR 61, 65).  On July 3, the Department of Homeland Security ("DHS") charged Petitioner as removable under the INA, 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without admission or parole.  (AR 61, 66).  Petitioner remained in detention for nearly six months, until his bond hearing on December 12, 2018.  (*See* AR 68-70).

At Petitioner's bond hearing, the IJ placed the burden on Petitioner to establish that he "does not present a danger to persons or property, is not a threat to national security, and does not pose a risk of flight."  (AR 62 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006))).  In seeking to satisfy this burden, Mr. Reyes submitted evidence in support of his release on bond, including a certificate of disposition from his criminal case (AR 80), the resulting order of protection (AR 82), a letter from Ms. Cruz demonstrating her support for Petitioner (AR 124), and a letter from Petitioner's social worker (AR 77-78).  In opposing Petitioner's bond, DHS submitted Petitioner's criminal

record (AR 142-44) and his Form I-213 Record of Deportable/Inadmissible
Alien (AR 139-41).

In assessing Petitioner's dangerousness, the IJ acknowledged Petitioner's
single arrest and resulting charges for third-degree assault and endangering
the welfare of a child, but also recognized that Petitioner "denie[d] ever striking
Ms. Cruz" and "pled guilty to a violation for disorderly conduct." (AR 62). On
this point, the IJ highlighted that the order of protection entered against Mr.
Reyes was "limited to prohibiting future criminal conduct [against Ms. Cruz
and his children] and [was] not a stay-away order." (AR 62). The IJ also
discussed the letter from Ms. Cruz, wherein she described Petitioner as a
"caring and responsible father" who "deserve[d] an opportunity to stay in the
United States and be able to raise his kids as he has been doing it so far with
love and responsibility." (AR 62-63). In addition, the IJ noted Petitioner's
"willing[ness] to attend an alcohol program although he denies that he has a
drinking problem, demonstrating that he is committed to becoming a better
man." (AR 63). Following this analysis, the IJ concluded that Petitioner did
not pose a danger to his community. (AR 63). Similarly, the IJ determined
that Petitioner "posed little flight risk," relying in large part on Petitioner's
duration of residence and "network of family" in New York, including his two
young children. (AR 63). In light of these conclusions, the IJ determined that
Petitioner had met his burden of "establish[ing] to the [c]ourt's satisfaction that
he is not a danger to the community and [that] any flight risk can be mitigated

by a bond in the amount of $8000," and ordered ICE to release Petitioner once he posted bond.  (AR 63).

On January 8, 2019, DHS appealed the IJ's decision to the BIA, arguing that the IJ had erred "because the [Petitioner's] release pose[d] a danger to property and persons."  (AR 53-56).  On August 27, 2019, the BIA sustained the appeal.  (*See* AR 4-5).  In its decision, the BIA stated the standard of review that it must apply to an IJ's decision, by which "findings of fact, including the determination of credibility, made by the Immigration Judge [are reviewed] under the 'clearly erroneous standard,'" whereas "all other issues, including issues of law, discretion, or judgment, [are reviewed] under a *de novo* standard."  (AR 4 (quoting 8 C.F.R. § 1003(d)(3)(i)-(ii))).  The BIA disagreed with the IJ that Petitioner "does not pose a danger and should be released pending resolution of his removal proceedings" and found Petitioner "ineligible for bond."  (AR 4-5).  In reaching that conclusion, the BIA cited "the recency and seriousness of [Petitioner's] domestic violence offense, combined with his failure to acknowledge his abuse of alcohol."  (AR 4-5).  The BIA also observed that under its precedent, Petitioner's family and community ties "generally do not mitigate an alien's dangerousness."  (AR 5 (citing *Matter of Siniauskas*, 27 I. & N. Dec. 207 (BIA 2018))).  On this reasoning, the BIA vacated the IJ's decision and revoked Petitioner's bond.  (AR 5).  The Court understands that Petitioner remains at liberty pursuant to the parties' agreement that Petitioner

will not be re-detained during the pendency of this litigation.  (Dkt. #41 at 15 (Answer); Gov. Br. 5, 19; Pet. Br. 20-21).

**B.    Procedural History**

Petitioner commenced the instant action on September 18, 2019, by filing his verified petition for writs of prohibition and mandamus and complaint seeking declaratory and injunctive relief.  (Dkt. #1).[3]  On January 3, 2020, Respondents filed their answer.  (Dkt. #41).  On January 27, 2020, the Court held an initial pretrial conference, where Petitioner indicated his intention to seek extra-record discovery and the parties indicated that upon the Court's resolution of this issue, they would submit cross-motions for summary judgment.  (Transcript of Pretrial Conference of January 27, 2020, at 20, 21).  On February 21, 2020, Petitioner filed a motion seeking extra-record discovery on both his APA and constitutional claims.  (*See* Dkt. #46).  On March 11, 2020, Respondents filed the certified administrative record (Dkt. #47), and shortly thereafter, on March 13, 2020, filed their opposition to Petitioner's discovery motion (Dkt. #48).  After receiving supplemental information from the parties (Dkt. #50-51),  the Court denied Petitioner's motion on August 3, 2020 (Dkt. #52).

On September 22, 2020, Respondents filed a joint letter proposing a briefing schedule for the parties' cross-motions for summary judgment.  (Dkt. #53).  By endorsement on that same day, the Court adopted the parties'

---

[3]     Due to a docketing error, Petitioner submitted the operative pleading on September 19, 2021.  (Dkt. #3).

proposed briefing schedule.  (Dkt. #54).  On October 15, 2020, Respondents filed their motion for summary judgment.  (Dkt. #55-56).  On December 16, 2020, Petitioner filed his cross-motion and opposition papers.  (Dkt. #58-59).[4] On January 14, 2021, Respondents filed their opposition and reply brief (Dkt. #64), and on February 15, 2021, Petitioner filed his reply.  (Dkt. #63).  The motions are fully briefed and ripe for decision.

## DISCUSSION

**A.    Applicable Law**

**1.    Motions for Summary Judgment Under Federal Rule of Civil Procedure 56**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-23 (1986).  When a district court is tasked with reviewing agency action under the APA, the "entire case on review is a question of law, such that judicial review of agency action is often accomplished by filing cross-motions for summary judgment."  *Gomez* v. *McHenry*, No. 19 Civ. 7373 (JPO), 2020 WL 6381959, at *2 (S.D.N.Y. Oct. 30, 2020) (internal quotation marks omitted) (quoting *Just Bagels Mfg., Inc.* v. *Mayorkas*, 900 F. Supp. 2d 363, 372 (S.D.N.Y. 2012)).  In deciding such a case, the district court assumes an appellate role and must "decide, as a matter of law, whether the agency

---

[4]    In addition to his memorandum of law, Petitioner filed a supporting declaration (Dkt. #58-1) and a notice of hearing in his immigration case (Dkt. #58-2).  As previously indicated, the Court will consider these as appropriate in resolving the instant motions. *See supra* note 2.

action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (alteration omitted) (quoting *Zevallos* v. *Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014)).

### 2.   Discretionary Detention of Noncitizens Under 8 U.S.C. § 1226(a), Bond Hearings, and BIA Appeals

The process of arresting and detaining noncitizens who face removal proceedings while in the United States is governed by the INA, 8 U.S.C. § 1226. The default rule is codified in Section 1226(a), which empowers immigration authorities to arrest and detain a noncitizen pending formal removal proceedings. *See* 8 U.S.C. § 1226(a); *see also Jennings* v. *Rodriguez*, 138 S. Ct. 830, 837 (2018). So long as the noncitizen suspected of being removable does not qualify for mandatory detention under Section 1226(c), which generally pertains to noncitizens convicted of certain crimes, the Government has wide discretion to detain the noncitizen or to release the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(1)-(2).

Federal regulations provide that a noncitizen detained under Section 1226(a) may seek a bond hearing before an IJ. 8 C.F.R. §§ 1236.1(d)(1), 1003.19(a). To release a noncitizen on bond, federal regulations provide, and administrative precedent has clarified, that "the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* § 1236.1(c)(8); *Matter of Guerra*, 24 I. & N. Dec. at 40. "An [IJ] has broad discretion in deciding the factors that he or she may

consider in custody redeterminations," including evidence of crimes for which Petitioner was not convicted. *Matter of Guerra*, 24 I. & N. Dec. at 40; 8 C.F.R. § 1003.19(d) ("The determination of the [IJ] as to custody status or bond may be based upon any information that is available to the [IJ][.]").

The Government or the noncitizen may appeal an IJ's adverse custodial determination to the BIA. 8 C.F.R. § 1236.1(d)(3). On appeal, the BIA reviews findings of fact by the IJ "only to determine whether [they] are clearly erroneous." *Id.* § 1003.1(d)(3)(i). The BIA has wider latitude to overturn non-factual determinations, as it may review all other "questions of law, discretion, and judgment … *de novo*." *Id.* § 1003.1(d)(3)(ii).

The INA also includes a limit on judicial review of immigration decisions that are committed to agency discretion. 8 U.S.C. § 1226(e). Section 1226(e) provides that the Government's "discretionary judgment regarding the application of this section shall not be subject to review," and further that "[n]o court may set aside any action or decision … under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." *Id.* Nevertheless, numerous courts have found that this jurisdictional bar does not permit the BIA to exceed the bounds of its legal powers or to flout constitutional guarantees free from judicial scrutiny. *See, e.g.*, *Demore* v. *Kim*, 538 U.S. 510, 517 (2003) ("[W]e think that [Section 1226(e)'s] clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."); *Gomez*, 2020 WL 6381959 at *2 ("§ 1226(e) … does not insulate the BIA's bond decisions from purely legal challenges.").

10

B.    **Analysis**

1.    **The Court Has Jurisdiction to Review Petitioner's Purely Legal Claims**

As a threshold matter, the Government argues that this Court lacks jurisdiction to review Petitioner's claims under the INA's jurisdictional bar because Petitioner's claims "amount to nothing more than a challenge to the BIA's discretionary judgment." (Gov. Br. 14). In response, Petitioner asserts that the BIA "has no discretion to apply § 1226 in violation of the law or Constitution," and thus this Court has jurisdiction to decide whether the BIA exceeded its authority under the Constitution or statute. (Pet. Br. 6).

Courts in this Circuit and elsewhere have read Section 1226(e) as preserving within federal district courts the power to review statutory or constitutional infirmities in the BIA's bond determinations. *See, e.g.*, *Nielsen* v. *Preap*, 139 S. Ct. 954, 962 (2019) (recognizing that Section 1226(e) "does not block lawsuits over the extent of the Government's detention authority under the statutory framework as a whole" (internal quotation marks omitted) (quoting *Jennings,* 138 S. Ct. at 841)); *Velasco Lopez* v. *Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (exercising judicial review over an immigration bond proceeding where Petitioner raised "a due process challenge not to his initial detention but to the procedures that resulted in his prolonged incarceration"); *Bogle* v. *DuBois*, 236 F. Supp. 3d 820, 822 (S.D.N.Y. 2017) (finding that Section 1226(e) does not divest the Court of jurisdiction to adjudicate "[c]laims of constitutional infirmity in the procedures followed at a[n] [immigration] bond

hearing."). Rather, "[Section] 1226(e) precludes jurisdiction only when a petitioner challenges the BIA's '*weighing* of factors relevant to the grant or denial of discretionary relief.'" *Gomez*, 2020 WL 6381959, at *2 (alteration omitted) (emphasis added) (quoting *Guyadin* v. *Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006)). Precedent has thus made clear that "[c]ourts may ... exercise jurisdiction over questions of law or constitutional challenges to the application of § 1226." *Lantigua* v. *Decker*, No. 17 Civ. 4880 (LGS), 2017 WL 5054567, at *2 (S.D.N.Y. Oct. 27, 2017).

Here, Petitioner asserts that the BIA committed several errors in its review of the IJ's decision that are reviewable by this Court. To begin, Petitioner contends that the BIA reviewed the IJ's factual findings *de novo* rather than for clear error. (Pet. Br. 5). This allegation that the BIA applied the wrong standard of review is indeed a question of law over which this Court has jurisdiction. *See, e.g.*, *Wu Lin* v. *Lynch*, 813 F.3d 122, 129 (2d Cir. 2016) ("The BIA's application of 'clear error' review is the application of a legal standard to findings of fact and as such is a ruling of law."); *see also Liu* v. *I.N.S.*, 508 F.3d 716, 721 (2d Cir. 2007) ("[A] petitioner could raise a reviewable 'question of law' by arguing that the IJ used the wrong legal standard[.]"). In this case, "[t]he Court has jurisdiction over [Petitioner's] APA claim insofar as it actually addresses the BIA's failure to review the IJ's factual findings for clear error." *Gomez*, 2020 WL 6381959, at *3. The cases the Government cites do not contradict — indeed, they confirm — the existence of this jurisdictional hook over purely legal challenges to immigration custody decisions. (*See* Gov. Br. 13

(citing, *e.g.*, *Bogle*, 236 F. Supp. 3d at 822; *Lantigua*, 2017 WL 5054567, at *2; *Y.C.* v. *Holder*, 741 F.3d 324, 336 (2d Cir. 2013) (dismissing for lack of jurisdiction because petition "does not raise a constitutional claim or question of law"))).[5]  Instead, Respondents stress throughout their briefing that the determination of dangerousness is a discretionary determination that the BIA may review *de novo* rather than for clear error.  (*See, e.g.*, Gov. Br. 11).  But the Court does not understand Petitioner to be challenging the BIA's ultimate determination of dangerousness.  Rather, he is challenging the "new and unsupported" factual findings that led to this conclusion.  (Pet. Br. 8).

Petitioner also argues that the BIA incorrectly placed the burden of proof on Petitioner, and that the Government should have borne the burden to prove by clear and convincing evidence that Petitioner was not entitled to bond.  (Pet. Br. 5).  This claim presents a challenge to the procedures and legal standards that were applied in Petitioner's immigration bond proceedings, and is not a second-guessing of "a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or

---

[5]    Respondents also cite *Carlson* v. *Landon* to argue that the Court lacks jurisdiction to review Petitioner's claims.  342 U.S. 524 (1952).  (*See* Gov. Reply 3).  But for many of the reasons Petitioner pointed out, this case does not command the extensive limitation on this Court's jurisdiction that the Government asserts.  (*See* Pet. Reply 2).  First, the Court in *Carlson* evaluated the application of the now-repealed Internal Security Act of 1950 to activists involved in the Communist Party.  *See* 342 U.S. at 541-42.  Moreover, the Court did not hold that the Attorney General's discretion was immune from all judicial review, but rather that it could "be overridden where it is clearly shown that it 'was without a reasonable foundation.'"  *Id.* at 540-41.  The raft of subsequent case law that carves out purely legal challenges from Section 1226(e)'s jurisdictional bar is thus not inconsistent with *Carlson*.

release." *Demore*, 538 U.S. at 516.  Petitioner's argument that the BIA violated

due process when it placed on him the burden of proof during custody

proceedings goes beyond seeking relief from a discretionary administrative

decision, for it "is not a matter of discretion" to offend the dictates of the

Constitution.  *Velasco Lopez*, 978 F.3d at 850 (quoting *Zadvydas* v. *Davis*, 533

U.S. 678, 688 (2001)).  Therefore, the Court possesses jurisdiction to decide

Petitioner's due process claim regarding the allocation of the burden of proof.

*See id.* (retaining *habeas* jurisdiction to adjudicate a petitioner's due process

challenge regarding the proper allocation of the burden of proof in an

immigration bond hearing); *Bogle*, 236 F. Supp. 3d at 822 ("Claims of

constitutional infirmity in the procedures followed at a bond hearing are not

precluded by § 1226(e).").[6]

---

[6]     Petitioner presents two further arguments over which he claims the Court may properly
exercise jurisdiction.  These arguments are that the BIA (i) unambiguously
mischaracterized the factual record (Pet. Br. 10), and (ii) misstated and failed to apply
the legal standards governing the evidence that may be considered at an immigration
custody proceeding (*id.* at 13).  The Court acknowledges that these arguments are
couched in the language of pure questions of law, and that courts within this Circuit
have at times exercised power to review similar claims.  *See, e.g., Liu* v. *I.N.S.*, 508 F.3d
716, 722 (2d Cir. 2007) (recognizing that an "IJ's unambiguous mischaracterization of
the record raises a question of law" (citation omitted)); *Gomez* v. *McHenry*, No. 19 Civ.
7373 (JPO), 2020 WL 6381959, at \*3 (S.D.N.Y. October 30, 2020) (exercising
"jurisdiction over [Petitioner's] APA claim insofar as it addresses the BIA's
misunderstanding, not unfavorable balancing, of the pertinent factors that may
undergird a bond decision.").  But, to the extent these arguments are more properly
construed as a disagreement over the manner in which the BIA weighed certain record
evidence, such as Petitioner's assault charge, or selected the factors it deemed most
relevant to its review of the IJ's bond determination, this Court lacks jurisdiction under
Section 1226(e).

14

### 2. The Government Violated Petitioner's Due Process Rights by Placing the Burden of Proof on Him

There is no dispute that the protections of the Fifth Amendment's Due Process Clause extend to noncitizens in deportation proceedings. *Demore*, 538 U.S. at 523; *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent."). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. And regardless of one's immigration status, "[c]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington* v. *Texas*, 441 U.S. 418, 425 (1979). When it comes to civil detention proceedings, the Supreme Court has established, outside of the immigration context, that "due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake … are both particularly important and more substantial than mere loss of money." *Cooper* v. *Oklahoma*, 517 U.S. 348, 363 (1996) (internal quotation marks omitted); *see also Kansas* v. *Hendricks*, 521 U.S. 346, 353-56 (1997) (holding that a civil commitment statute satisfied the Due Process Clause in part because it "plac[ed] the burden of proof upon the State"). The Government undoubtedly has legitimate interests in ensuring that potentially removable noncitizens appear at future immigration proceedings and do not present a danger to the community, but due process must account for the wide

15

discretion that Section 1226(a) vests in the Government to arrest *any* person in the United States suspected of being removable, on these grounds alone.  *See Garcia* v. *Decker*, 448 F. Supp. 3d 297, 301-02 (S.D.N.Y. 2020) ("Section 1226(a) is of extraordinary breadth"); *Linares Martinez* v. *Decker*, No. 18 Civ. 6527 (JMF), 2018 WL 5023946, at *4 (S.D.N.Y. Oct. 17, 2018).

The Court finds persuasive the logic employed by the "[n]umerous district courts in the Second Circuit, including this Court, [that] have consistently applied these principles to hold that where, as here, the Government seeks to detain a noncitizen pending removal pursuant to § 1226(a), the Fifth Amendment Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that such detention is justified."  *Banegas* v. *Decker*, No. 21 Civ. 2359 (VEC), 2021 WL 1852000, at *2-3 (S.D.N.Y. May 7, 2021) (collecting cases); *see also Jimenez* v. *Decker*, No. 21 Civ. 880 (VSB), 2021 WL 826752, at *11 (S.D.N.Y. Mar. 3, 2021) (applying the three-factor balancing test from *Mathews* v. *Eldridge*, 424 U.S. 319, 334-35 (1976), and concluding that due process requires the Government to bear the burden of proving by clear and convincing evidence that a detainee is either a danger to the community or a flight risk); *Guerrero* v. *Decker*, 19 Civ. 11644 (KPF), 2020 WL 1244124, at *3-4 (S.D.N.Y. Mar. 16, 2020) (reasoning that the important liberty interests at stake in an immigration bond hearing and the substantial risk of harm in the event of error make it proper to place the burden on the Government to prove by clear and convincing evidence that a noncitizen presents a danger or flight risk).  Respondents have not presented,

16

and the Court has not found, any compelling reason to depart from this widely-held position.[7]  Therefore, this Court remains with the "overwhelming majority of courts" that have found that the Due Process Clause of the Fifth Amendment requires that at a bond hearing under Section 1226(a), the Government must bear the burden of demonstrating by clear and convincing evidence that detention is justified because the noncitizen presents a danger to the community or a flight risk.  *See Linares Martinez*, 2018 WL 5023946, at *5.

In pursuing relief, "[p]arties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process."  *Garcia-Villeda* v. *Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (internal quotation marks omitted).  Petitioner has done so here, because the BIA could have found — as the IJ found — that the Government had not proven by clear and convincing evidence that Petitioner posed a danger to the community, given the record evidence of Petitioner's (i) denial of the allegations contained in his arrest report (AR 62); (ii) plea to a nonviolent violation (AR 62); (iii) resulting "limited" order of protection (AR 62); (iv) "more than ten years of physical presence" without an arrest (AR 62); and

---

[7]     The Second Circuit's decision in *Velasco Lopez* v. *Decker* does not alter the analysis. 978 F.3d 842 (2d Cir. 2020).  In *Velasco Lopez*, the Second Circuit declined to "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," *id.* at 855 n.13, holding only that petitioner's "unduly prolonged" detention entitled him to such a hearing, *id.* at 855. But "[n]either the Circuit's decision in *Velasco Lopez* nor any other binding appellate authority overrules the 'overwhelming consensus' of courts in this District that the Due Process Clause of the Fifth Amendment requires the Government to bear the burden to justify continued detention of a noncitizen who is detained pursuant to § 1226(a), even absent 'prolonged detention.'" *Banegas* v. *Decker*, No. 21 Civ. 2359 (VEC), 2021 WL 1852000, at *3 (S.D.N.Y. May 7, 2021).

(v) willingness to attend alcohol treatment (AR 63).  *See Guerrero*, 2020 WL 1244124, at *5.  As such, the Court finds that Petitioner has alleged a "cognizable prejudice" stemming from the BIA's violation of Petitioner's due process rights under the Fifth Amendment, such that he is entitled to relief.

### 3. The BIA Violated the APA by Failing to Apply Clear Error Review and Engaging in *De Novo* Factfinding

Petitioner's APA claims, by contrast, require this Court to "consider[] whether the BIA's decision was 'arbitrary, capricious, … or otherwise not in accordance with law.'"  *Gomez*, 2020 WL 6381959, at *4 (quoting 5 U.S.C. § 706(2)(A)).  Although this standard is "highly deferential," *Residents for Sane Trash Sols., Inc.* v. *U.S. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 588 (S.D.N.Y. 2014), "no such deference is due when the agency's decision rests on legal error," *Li* v. *I.N.S.*, 453 F.3d 129, 137 (2d Cir. 2006).  Indeed, "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review."  *Velasco Lopez*, 978 F.3d at 850 (citing *Boumediene* v. *Bush*, 553 U.S. 723, 781-83, 786 (2008)).  In the instant action, Petitioner contends that the BIA committed legal error by failing to apply the correct standard of review to the IJ's factual determinations and impermissibly engaging in its own factfinding.[8]

---

[8]     In addition to Petitioner's due process claim related to the BIA's misallocation of the burden of proof, discussed *supra*, Petitioner alleges that the BIA committed three additional "distinct but overlapping" errors.  (Pet. Br. 5)  Specifically, Petitioner contends that the BIA (i) failed to apply clear error review and instead relied on *de novo*

Under federal regulations, "[t]he [BIA] may review questions of law, discretion, and judgment … *de novo*," whereas "[f]acts determined by the [IJ], including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings … are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i)-(ii). A finding is clearly erroneous when "the BIA can conclude, with sufficient justification, that a 'clear error' has been committed." *Wu Lin*, 813 F.3d at 128; *see also United States* v. *Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). The BIA is similarly not permitted to "engage in factfinding in the course of deciding cases, except that the [BIA] may take administrative notice of facts that are not reasonably subject to dispute." 8 C.F.R. § 1003.1(d)(3)(iv)(A).

When a court reviews an agency decision rejecting a finding of fact on clear error review, it applies the "traditional approach to reviewing a ruling of law — *de novo* review." *Wu Lin*, 813 F.3d at 129. "[D]e novo review in the context of determining whether the BIA in fact subjected an IJ's factual

---

factual findings, (ii) unambiguously mischaracterized the factual record, and (iii) inappropriately "assum[ed] a probative value of an unproven assault allegation." (*Id.*).

The Court agrees that these three arguments are interrelated, but reiterates that it is bound by Section 1226(e)'s bar to judicial review of the BIA's discretionary determinations. *See supra* note 6. As explained *infra*, the Court finds that it was not an exercise of the BIA's discretion to fail to review at least one of the IJ's crucial factual determinations under the appropriate "clearly erroneous" standard. Because the Court grants Petitioner relief on this theory, and because it believes it may lack jurisdiction to consider Petitioner's other two arguments, the Court does not reach these putative "interrelated" errors.

findings to clear-error review does not mean that [courts] can redetermine *de novo* whether [they] think the IJ has committed clear error." *Gomez*, 2020 WL 6381959, at *4 (alteration in original) (quoting *Wu Lin*, 813 F.3d at 129). Rather, the Court must determine "whether the BIA has provided sufficient justification for its conclusion that the IJ has committed clear error." *Id.* (quoting *Wu Lin*, 813 F.3d at 129). "A sufficient justification for departing from the IJ's factual findings provides specific, cogent reasons as support," and "[i]n the absence of such reasons, reviewing courts assume that the BIA conducted an improper *de novo* review of facts." *Id.* (internal quotation marks omitted) (quoting *Wu Lin*, 813 F.3d at 130-31).

In diverging from the IJ's conclusion that Petitioner did not present a danger to society, the BIA explained that "[c]onsidering the recency and seriousness of his domestic violence offense, combined with his failure to acknowledge his abuse of alcohol … [Petitioner] has not met his burden of establishing that he does not present a danger to the community." (AR 5). In this regard, Petitioner alleges that the BIA made at least two new, and therefore impermissible, factual findings in reversing the IJ's decision on Petitioner's bond: (i) that Petitioner committed a "domestic violence offense," and (ii) that Petitioner has an alcohol "abuse" problem. (Pet. Br. 8; AR 4-5). In response, the Government argues that the BIA's factual findings on these subjects are supported by the record and merely reflect a discretionary re-weighing of the events surrounding Petitioner's June 2018 arrest. (Gov. Br. 15-16).

20

The Court agrees with the Government as to its characterization of the BIA's assessment of Petitioner's domestic offense. The BIA's reference to a domestic violence "crime" or "offense" (AR 4) does not contradict any of the IJ's factual findings, and can plausibly be read as contextualizing a number of facts the IJ considered, including Petitioner's arrest, the ensuing charges for assault and child endangerment, his guilty plea for disorderly conduct, and the consequent limited protective order. (AR 62-63). Petitioner argues that the BIA's basis for concluding that Petitioner committed a "domestic violence offense" was, in large part, the fact of Petitioner's misdemeanor assault charge, and thus the BIA implicitly assumed he committed a violent assault for which he was not convicted. (Pet. Br. 11). The Court does not understand the BIA to necessarily have so presumed, as the BIA's reference to a "domestic violence offense" can properly admit of the context surrounding Petitioner's guilty plea for disorderly conduct under New York Penal Law § 240.20(7) — a crime that may constitute a family offense under New York law. *See* N.Y. Crim. Proc. Law §§ 530.11(1), 530.12 (McKinney 2020).

And while the IJ emphasized that Petitioner "*allegedly* slapped and punched" Ms. Cruz and credited Petitioner's statement that he "*denies ever striking* Ms. Cruz" (*see* AR 62 (emphases added)), the BIA was not *required* to weigh these considerations as the IJ did and was permitted to consider evidence of crimes for which Petitioner was not convicted. *See Blanco Robles* v. *Barr*, 803 F. App'x 490, 493 (2d Cir. 2020) (summary order) ("To the extent that [Petitioner] argues that the agency put too little weight on certain evidence, the

21

weight the agency gives to the evidence and its balancing of factors is beyond our jurisdiction."); *Matter of Guerra*, 24 I. & N. Dec. at 40. On this analysis, the Court is without power to challenge the BIA's accentuation of Petitioner's "domestic violence offense" in determining his eligibility for bond, as it can be construed consistently with the IJ's factual findings. *See Gomez*, 2020 WL 6381959, at *3 (concluding that it lacked jurisdiction over the portion of petitioner's argument regarding "the BIA's weighing of the pertinent facts").

However, the Court cannot similarly reconcile the IJ's crediting of Petitioner's "deni[al] that he has a drinking problem" (AR 63) with the BIA's reliance on Petitioner's "failure to acknowledge his abuse of alcohol" in revoking his bond (AR 5). On this point, the BIA's finding that Petitioner failed to appreciate his alcohol problem was a "revers[al] [of] the IJ, *not* on the basis of having found clear error, but instead based on disputed material facts with respect to which the IJ reached no resolution." *Padmore* v. *Holder*, 609 F.3d 62, 68 (2d Cir. 2010). The IJ did not find that Petitioner ever abused alcohol and there is no evidence in the record to suggest Petitioner has an alcohol problem that causes or exacerbates his potential dangerousness. The only comment the IJ made regarding Petitioner's alcohol use was that Petitioner "denie[d] that he has a drinking problem," but was nevertheless "willing to attend an alcohol program." (AR 63). Rather than fault Petitioner for his "failure to acknowledge his abuse of alcohol," as the BIA did (AR 5), the IJ credited Petitioner's willingness to attend this program as demonstrating his

"commit[ment] to becoming a better man." (AR 63). This is a factual finding that the BIA was legally obliged to review for clear error.

The Second Circuit has held that this type of departure from an IJ's factual findings constitutes "impermissible appellate factfinding contrary to 8 C.F.R. § 1003.1(d)(3)(iv)." *Padmore*, 609 F.3d at 68. A sister court similarly held that the BIA may not "cast doubt on the IJ's findings" on its own accord and without explanation when an "IJ made no adverse credibility finding against [Petitioner] and chose to credit his representations." *Gomez*, 2020 WL 6381959, at *4. Indeed, the Government concedes that the BIA diverged from the IJ's factual findings in its briefing. (*See* Gov. Reply 8 ("[T]he BIA ... depart[ed] from the [IJ's] factual findings regarding [Petitioner's] ... alcohol use.")). As justification for this departure, the BIA references "the letter from [Petitioner's] spouse reflect[ing] that the respondent was 'influenced by alcohol' at the time of the domestic violence crime[.]" (AR 4). However, the BIA does not actually explain *how* this statement from Ms. Cruz's letter, on its own, supports its divergence from the IJ or the logical leap that Petitioner abused alcohol and failed to acknowledge it. In full context, Ms. Cruz writes that Petitioner "made a mistake, I believe influenced by the alcohol and jealousy." (AR 124). Ms. Cruz does not refer to any quantity of alcohol, or even say that he drank too much, but rather that she believes a confluence of at least two factors, potentially including alcohol, may explain the incident, which Petitioner "truly regrets." (AR 124). Petitioner denies having an alcohol abuse issue (AR 63, 77), and Ms. Cruz's statement hardly makes clear that Petitioner

has such a substance abuse problem, much less one that poses a threat to the community at large.  Indeed, the IJ drew the opposite conclusion when she credited the parts of Ms. Cruz's letter that "described [Petitioner's] behavior as a mistake" and expressed her feelings that Petitioner was "hard-working and respectful" and a "caring and responsible father."  (AR 62-63 (alteration omitted)).  Thus, the BIA's citation to the record, without more, cannot stand as a "specific" or "cogent" reason to explain why the BIA contravened the IJ's findings on Petitioner's purported alcohol abuse.  *Wu Lin*, 813 F.3d at 129.  And as explained *supra*, "[i]n the absence of such reasons, reviewing courts assume that the BIA conducted an improper *de novo* review of facts."  *Gomez*, 2020 WL 6381959, at *4 (quoting *Wu Lin*, 813 F.3d at 129).

In sum, the Court finds that the BIA made at least one new and unsupported factual finding that it cited as a primary reason for overturning the IJ's determination of Petitioner's dangerousness.  (AR 4-5).  This finding was inconsistent with clear error review, and Petitioner is thus entitled to relief from the BIA's decision.  *See Gomez*, 2020 WL 6381959, at *4 ("If the BIA were engaging in a *de novo* review of the facts, its simple disagreement with the IJ could suffice and warrant departure from the IJ's findings," but that is "[n]ot so for a clear-error review.").[9]

---

[9]     The Government's remaining arguments are unavailing.  *First*, the Government argues that the BIA properly applied clear error review because the "BIA expressly identified the correct standard of review."  (Gov. Reply 5).  The mere fact that the BIA recited the correct standard does not mean it properly applied that standard.  Notably, in *Gomez*, the BIA also recited the correct standard of review, but the court nevertheless found that the BIA failed to apply it.  *See Gomez*, 2020 WL 6381959, at *2, *4.  *Second*, the

24

4.      **The Court Denies Petitioner's Remaining Requests for Relief**

      a.      **Petitioner's Request for Mandamus Is Denied**

In the alternative, Petitioner seeks a writ of mandamus under 28 U.S.C. § 1361 to "order[] the Government to reinstate his unlawfully-vacated bond order, or re-adjudicate his bond pursuant to the correct legal standards." (Pet. Br. 17). The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To obtain relief, one must show that "[i] there is a clear right to the relief sought; [ii] the Government has a plainly defined and peremptory duty to perform the act in question; and [iii] there is no other adequate remedy available." *Benzman* v. *Whitman*, 523 F.3d 119, 133 (2d Cir. 2008). The Court may dispense with this request quickly, as there are clearly alternative avenues of relief available to Petitioner in this matter. Petitioner seeks — and this Court grants — relief under the APA and Due Process Clause. *See Sharkey* v. *Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (dismissing mandamus claims "because [petitioner's] claims for mandamus duplicate her claims under the APA"); *see also Ex parte Republic of Peru*, 318

---

Government attempts to draw a distinction between a mixed question of law and a purely legal question to argue that Petitioner claims the BIA misapplied the law to the facts. But the Government mischaracterizes Petitioner's argument. (*See* Gov. Reply. 4 ("[Petitioner] does not claim, for example, that the BIA misidentified or applied the wrong legal standard ….")). At the heart of Petitioner's claim is the allegation that the BIA applied the wrong legal standard — a question of law. *See Wu Lin* v. *Lynch*, 813 F.3d 122, 129 (2d Cir. 2016) ("The BIA's application of 'clear error' review is the application of a legal standard to findings of fact and as such is a ruling of law.").

U.S. 578, 584 (1943) ("[T]he common law writs … are usually denied where other adequate remedy is available.").  Petitioner's request for a writ of mandamus is thus denied.

### b.    Due Process Does Not Entitle Petitioner to a Pre-Detention Hearing

Petitioner also asks this Court for a writ of prohibition enjoining the Government from re-detaining him absent a pre-detention hearing where the Government must prove by clear and convincing evidence that Petitioner is a danger to the community and that flight risk cannot be mitigated by bond.[10] But the Due Process Clause of the Fifth Amendment does not entitle Petitioner to such a hearing at this specified time, and Petitioner cites no authority within this Circuit that counsels otherwise.  (*See* Pet. Br. 19).  Specifically, Petitioner relies on caselaw that addresses the liberty interest afforded to parolees, *Morrissey* v. *Brewer*, 408 U.S. 471 (1972); individuals on supervised release, *United States* v. *Sanchez*, 225 F.3d 172 (2d Cir. 2000); and unaccompanied noncitizen children placed with sponsors, *Lopez* v. *Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726 (S.D.N.Y. June 12, 2018).  Despite the admittedly weighty individual liberty interests at stake, the Court does not find these

---

[10]    The Government contends that Petitioner's request for a pre-detention hearing with certain procedural protections is (i) moot because the Government has agreed not to detain Petitioner for the pendency of this litigation, or (ii) unripe because Petitioner cannot demonstrate that he will be re-arrested.  (Gov. Br. 18-19).  These arguments prove too much.  As to mootness, the Government's voluntary agreement not to re-arrest Petitioner "while this action is pending" does not reach beyond the life of this litigation, and thus does not represent any future promise that he will not be re-detained.  As to ripeness, Petitioner need not wait until he is re-arrested — a real, even if temporally uncertain proposition — to argue that he is entitled to a pre-detention hearing.  *See Simmonds* v. *I.N.S.,* 326 F.3d 351, 358 (2d Cir. 2003) ("[A]bsolute certainty of injury is not required for a case to be constitutionally ripe.").

cases analogous to the situation at bar.  *See Mathews* v. *Diaz,* 426 U.S. 67, 80 (1976) ("The exclusion of aliens and the reservation of the power to deport have no permissible counterpart in the Federal Government's power to regulate the conduct of its own citizenry." (internal footnotes omitted)); *see also Lopez*, 2018 WL 2932726, at *8 (finding that it violated due process to re-detain, *without any procedure or evidentiary findings*, an unaccompanied minor who had been released on a finding of non-dangerousness).  As such, the Court is not persuaded that it should find a due process right to a pre-detention hearing where a noncitizen, subject to pending removal proceedings and in the midst of litigating a dispute over the BIA's decision to revoke his bond, is at risk of being re-detained after being at liberty for more than two years.  (Pet. Br. 18).[11]

Despite the weighty liberty interests implicated by the Government's detention of noncitizens under § 1226(a), the Court does not deny that "[i] n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews* v. *Diaz*, 426 U.S. at 79-80).  The Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523.  Further, the Government has wide discretion to arrest and detain a noncitizen "pending

---

[11]     Petitioner also cites *Ortega* v. *Bonnar*, where a sister court granted a pre-detention hearing after petitioner failed to receive adequate notice of activities in his case that resulted in his detention.  415 F. Supp. 3d 963, 966 (N.D. Cal. 2019).  Putting aside the factual differences, this decision is not binding on this Court and the Court does not understand *Ortega* to establish a constitutional right to pre-detention hearings in the circumstances of this case.

a decision on whether the alien is to be removed from the United States."
8 U.S.C. § 1226(a). This is not a case where Petitioner, if re-detained, stands to
be held indefinitely, or contemplates that he will not receive any further
process as to his entitlement to release on bond. *See Zadvydas*, 533 U.S. at
690 ("A statute permitting indefinite detention of an alien would raise a serious
constitutional problem."). The Government points out that individuals
detained under Section 1226(a) are afforded a variety of procedural protections,
including (i) a bond hearing that stands "separate and apart" from removal
proceedings, in which both sides submit evidence (*see* 8 C.F.R. § 1003.19(d));
(ii) an appeal of that bond hearing (*id.* § 1003.38(a)); and (iii) the possibility of a
bond redetermination if and when circumstances have materially changed (*id.*
§ 1003.19(e)). (Gov. Br. 21-22). And as already discussed, Petitioner may raise
any legal or constitutional challenges with the Court. *See Bogle*, 236 F. Supp.
3d at 822 (retaining jurisdiction to hear "[c]laims of constitutional infirmity in
the procedures followed at a[n] [immigration] bond hearing."). Indeed,
Petitioner has already pursued some of this available process, and may seek
further process if re-detained. The question as to whether Petitioner is entitled
to a bond hearing *at some point* if re-detained is not one the Court must answer
in this case.

The Court understands that the BIA violated both the APA and the Due
Process Clause in adjudicating Petitioner's bond proceedings. But these
violations and the specter that he may be re-detained as a noncitizen in

28

removal proceedings do not afford Petitioner a constitutional right to a pre-detention hearing under these circumstances.

## CONCLUSION

For the reasons set forth in this Opinion, the BIA's August 27, 2019 decision and the IJ's February 4, 2019 decision are hereby VACATED.  This matter is REMANDED to the IJ for further proceedings consistent with this Opinion.  This Order does not enjoin Respondents from re-detaining Petitioner. However, if the Government decides to exercise its discretionary power to re-detain Petitioner, given the history of this case and Petitioner's prior detention, Respondents shall provide Petitioner with a bond hearing consistent with this Opinion within **seven (7) days** of the date of Petitioner's detention.  The Clerk of Court is directed to terminate the motions pending at docket entries 55 and 58, and to close this case.

SO ORDERED.

Dated:      August 20, 2021
            New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge